DANIEL COX v. FREDERICK CHESTER.

*Replevin for beasts distrained—May be brought under general statute if defendant acted in bad faith—Division fences.*

1. No person has a right to distrain cattle lawfully upon adjoining land which have escaped therefrom in consequence of his own neglect to maintain his part of the division fences; and the owner of such cattle, if distrained, may replevy them under the *general* statute.

2. How. Stat. chapter 289, relative to distraining and replevying beasts, was intended to provide a summary remedy for any person injured in land by certain enumerated beasts *trespassing* thereon; and when a party has in *good faith* taken cattle *damage-feasant*, thereunder, and the owner desires to bring replevin to test the legality of such taking, he must proceed under the *special* provisions of said chapter. *Johnson v. Wing,* 3 Mich. 163; *Hamlin v. Mack,* 33 Id. 103; *Campau v. Konan,* 39 Id. 362.

Error to Washtenaw. (Kinne, J.) Argued October 9, 1889. Decided November 8, 1889.

Replevin. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Samuel W. Burroughs,* for appellant.

*J. Willard Babbitt,* for defendant.

[The points of counsel are fully stated in the opinion. —REPORTER.]

CHAMPLIN, J. The plaintiff brought suit in replevin, in the ordinary form, to recover possession of certain cattle belonging to the plaintiff. The defendant pleaded the general issue, and set up—

"That said plaintiff's cattle broke into said defendant's inclosed lot, and damaged said defendant's crops to the amount of twenty dollars, for which said defendant asks judgment against said plaintiff, together with distraining fees and costs of suit."

The plaintiff recovered before the justice, and defendant appealed. In the circuit the case was tried before a jury. Upon the trial the plaintiff introduced testimony tending to show that the plaintiff and defendant were owners of adjoining premises, and that they had mutually agreed upon a partition of the line fence between them, and that each agreed to build his share; that plaintiff went on and built his share, but the defendant neglected to build his, and there was no fence upon that portion which he had agreed to build; that a few rods distant, upon defendant's land, there existed an old fence, which was in some places three feet in height, and at others four to four and one-half feet high; that before he turned his cattle into his lot he informed defendant of his purpose; that defendant told him to turn them in; that plaintiff told him that his fence would not stop cattle, and he said, "You turn them in there, and it will be all right," and so he turned them in; that the cattle passed upon defendant's land, where he had neglected to build his share of the line fence, and passed over the old fence upon defendant's land, where defendant found them, and impounded them in his cow-yards, and gave plaintiff notice, and requested him to come and pay damages and get the cattle.

The testimony as to the agreement to partition and to build the line fence, and his consent that plaintiff might

put his cattle in the field, was denied by defendant. The court submitted questions to the jury to find specially upon, which, with their answers, were as follows:

"1. Do the lands of defendant join immediately on the lands from which the cattle came?

"*A.* Yes.

"2. Did plaintiff erect his part of the line fence as agreed?

"*A.* Yes.

"3. Was there an agreement between the plaintiff and defendant to build a line fence?

"*A.* Yes.

"4. Has defendant, Chester, made his line fence, and is there a line fence on the part of defendant?

"*A.* No.

"5. Did the cattle get over south and east of the board fence, and over the old rail fence, if they got over at all?

"*A.* Yes.

"6. Did defendant, Chester, actually find plaintiff's cattle on his (defendant's) land doing damage, and shut them up in his yard, and notify plaintiff that he held them for the damage they had done?

"*A.* Yes; but we believe the cattle got into said Chester's lot by reason of his failure to build a line fence as agreed, and we therefore find for the plaintiff, and assess his damages at six cents."

The jury came into court, and returned a general verdict for plaintiff, which was entered in due form, upon which judgment in favor of the plaintiff and against the defendant was rendered on May 10, 1889. On May 13 the defendant moved to set aside the judgment, and that a new judgment be entered in his favor, upon the ground that the special findings were inconsistent with the general verdict of the jury. After argument and consideration, the court set aside the judgment, and rendered one in favor of the defendant for costs. He bases his action upon the last finding of fact by the jury, and upon the theory that the plaintiff had mistaken his remedy; that,

instead of bringing the ordinary action of replevin, he should have brought it under chapter 289, How. Stat., relative to distraining and replevying beasts; in support of which he cites the following cases: *Campau v. Konan,* 39 Mich. 362; *Marx v. Woodruff,* 50 Id. 361 (15 N. W. Rep. 510), and 51 Id. 605 (17 N. W. Rep. 76).

In reviewing this action of the circuit judge, it is proper to call attention to the charge of the circuit judge to the jury, and the bearing of the general verdict rendered under such charge. The learned judge explained to the jury that there were two forms of replevin,—one what is known as the "general form;" the other a "special form," where defendant has distrained animals doing damage upon his premises. And he charged that where animals are distrained for doing damage, and the plaintiff wishes to obtain his property by an action of replevin, he must plant his action on this special or particular form of replevin, and if he fails to do so he mistakes his remedy, and must fail in his action. And he said to the jury:

"In this case Mr. Chester claims to have taken these animals while they were trespassing upon his premises, and to have shut them up, and notified the owner, claiming damages. Now, gentlemen of the jury, if that be true, if you find from the evidence that it be a matter of fact, then I charge you that the plaintiff in this case has mistaken his remedy, and I give you this question of fact for you to determine, about which, perhaps, there is not any serious controversy, and yet there may be; it is for you to say. If you find from the evidence in this case that the defendant, Chester, actually found plaintiff's cattle in his field doing damage, and that thereupon defendant, in good faith, took the cattle and shut them up in his yard, and notified the owners thereof, and claimed damage for the trespass they had committed, then your verdict should be for the defendant. Of course, if if you should find the other way, your verdict should be for the plaintiff."

77 Mich.—32.

He also instructed the jury as follows:

"If the jury believe from Daniel Cox's testimony that there was an agreement between him, acting for Charles Cox, and defendant to build the line fence, and that Cox did build his part as agreed, and the cattle got over the rail fence ten rods south and east of the new board fence, then defendant had no right to shut the cattle up, and plaintiff is entitled to recover in this action."

Under these instructions, the jury returned a general verdict for the plaintiff. That the defendant found the cattle upon his premises doing damage, that he shut them up, and notified the plaintiff, and claimed damages for the damage done, are facts found by the special verdict, and must be taken as established. But the court submitted to the jury an additional fact, not in conflict with the special verdict, but which lay at the foundation of the defendant's right to distrain the animals at all; and that was the question of his good faith in shutting them up and claiming damages.

In finding a general verdict for the plaintiff, under the charge, the jury must have found that the defendant did not act in good faith in distraining the cattle. If the jury found from the testimony that there was an agreement as to the division and building of the line fence, and plaintiff built his, and defendant did not, and if he was informed by plaintiff that he desired to turn his cattle into his own field, and expressed an opinion that the old fence mentioned in the testimony was insufficient to keep them from getting into defendant's field, and defendant told him to turn them in, and it would be all right, and the plaintiff, acting upon this interview, did put his cattle in his own field, the jury would be justified in finding that the cattle entered upon defendant's premises with his consent, and that he had waived in advance any claim that

the cattle in thus entering his fields committed a trespass; and they would be also justified in finding from such testimony that the defendant did not act in good faith in distraining the cattle. In *Campau v. Konan* it was said:

"Where the defendant has in good faith taken the cattle *damage-feasant*, then, if the owner desires to bring replevin to test the legality thereof, he must proceed under chapter 214 [C. L. of 1871]."

The general verdict was consistent with the judge's charge upon the question of good faith, and the special findings nowhere contravene the general verdict in this respect.

The statute relative to distraining and replevying beasts was intended to provide a summary remedy for any person injured in his land by certain enumerated beasts trespassing thereon. How. Stat. § 8358 enacts:

"When any person is injured in his land by sheep, swine, horses, asses, mules, goats, or neat cattle, he may recover his damages * * * by distraining the beasts doing the damage, and proceeding therewith as hereinafter directed; but if the beasts shall have been lawfully on the adjoining lands, and shall have escaped therefrom in consequence of the neglect of the person who has suffered the damage to maintain his part of the division fences, the owner or person having the control of the beasts shall not be liable for such damages."

This statute gives a remedy by distress against the owner of cattle which are committing a trespass. But no person has a right to distrain cattle lawfully upon adjoining land which have escaped therefrom in consequence of his own neglect to maintain his part of the division fences. And he cannot by distraining in such case, and claiming damage which the statute says he shall not recover, or the owner of the cattle be liable for, drive his neighbor to proceed under this special

statute, nor can he deprive him of any remedy the law affords to him to recover property wrongfully taken and detained.

Under the special findings in this case, the defendant has no right whatever to take the cattle up, and withhold the possession of them from the plaintiff; and under such findings of fact it is clear that he acted in bad faith in distraining the cattle.

It follows that the judgment last entered by the circuit judge in favor of the defendant must be reversed, set aside, and held for naught, and the order setting aside the original judgment vacated, and the judgment as originally entered will stand as the judgment in the cause. Plaintiff will recover his costs in this Court.

The other Justices concurred.